IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE SMITH,                )
                                 )
          Plaintiff,             )
                                 )
     v.                          )    No. 05 C 4907
                                 )
ILLINOIS DEPARTMENT OF HUMAN     )
SERVICES,                        )
                                 )
          Defendant.             )

## OPINION AND ORDER

Plaintiff Jacqueline Smith is a former employee of defendant Illinois Department of Human Services. She worked in the dietary department providing food services at the John J. Madden Mental Health Center ("Madden") from 2000 to 2004. In 2003, plaintiff began complaining about sexual harassment, eventually filing a complaint with the EEOC. Shortly after her first EEOC complaint was filed, disciplinary proceedings were instituted that eventually resulted in her discharge for the stated reason of unauthorized absences. Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., plaintiff brings claims of sexual harassment and a retaliatory

discharge for having complained of sexual harassment. Defendant has moved for partial summary judgment dismissing the retaliation claim.[1]

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Scott v. Harris, 127 S. Ct. 1769, 1774, 1776 (2007); Fischer v. Avanade, Inc., 519 F.3d 393, 401 (7th Cir. 2008); Scaife v. Cook County, 446 F.3d 735, 738-39 (7th Cir. 2006). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Hicks v. Midwest Transit, Inc., 500 F.3d 647, 651 (7th Cir. 2007); Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer, 472 F.3d 943, 946 (7th Cir. 2007); Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);

---

[1] Since April 20, 2006, Local Rule 56.1(b)(3)(C) has provided that the nonmoving party's statement of additional facts is limited to 40 paragraphs. Plaintiff's counsel apparently was unaware of this Rule. Plaintiff's Rule 56.1(b)(3)(C) statement contains 51 paragraphs. Defendant contends paragraphs 41 through 51 should be stricken or ignored. Violation of the Rule is not condoned and plaintiff should have either requested leave to file the additional paragraphs or modified the statement. Nevertheless, the court sua sponte grants leave to file the oversized statement. Many--perhaps a majority--of the paragraphs contain only one sentence. As a whole, the statement is not lengthy and is probably shorter than many 40-paragraph statements that have been submitted to the court.

Hicks, 500 F.3d at 651; Jumer, 472 F.3d at 946. The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See Lorillard Tobacco Co. v. A & E Oil, Inc., 503 F.3d 588, 594-95 (7th Cir. 2007); Yasak v. Retirement Bd. of Policemen's Annuity & Benefit Fund of Chicago, 357 F.3d 677, 679 (7th Cir. 2004); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir. 1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir. 1988); Freundt v. Allied Tube & Conduit Corp., 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing

that there is a genuine issue for trial." Fed.
R. Civ. P. 56(e). "The nonmovant must do
more, however, than demonstrate some factual
disagreement between the parties; the issue
must be 'material.'" Logan, 96 F.3d at 978.
"Irrelevant or unnecessary facts do not preclude
summary judgment even when they are in dispute."
Id. (citation omitted). In determining whether
the nonmovant has identified a "material" issue
of fact for trial, we are guided by the
applicable substantive law; "[o]nly disputes that
could affect the outcome of the suit under
governing law will properly preclude the entry of
summary judgment." McGinn v. Burlington Northern
R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996)
(citation omitted). Furthermore, a factual
dispute is "genuine" for summary judgment
purposes only when there is "sufficient evidence
favoring the nonmoving party for a jury to return
a verdict for that party." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505,
91 L. Ed. 2d 202 (1986). Hence, a "metaphysical
doubt" regarding the existence of a genuine
fact issue is not enough to stave off summary
judgment, and "the nonmovant fails to demonstrate
a genuine issue for trial 'where the record taken
as a whole could not lead a rational trier of
fact to find for the non-moving party . . . .'"
Logan, 96 F.3d at 978 (quoting Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538
(1986)).

Outlaw, 259 F.3d at 837.

Plaintiff concedes she does not have sufficient direct evidence of retaliation and instead relies on the indirect method of proof. Under the indirect method, plaintiff may establish a prima facie case of retaliation by making a sufficient showing that: (1) she engaged in a statutorily protected activity;

(2) she satisfied defendant's legitimate expectations;[2] (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. If plaintiff succeeds in making the prima facie showing, the burden of production shifts to defendant to provide a non-discriminatory reason for the adverse employment action. If defendant meets its burden, then the burden of proof remains with plaintiff to adequately demonstrate that the proffered reason is pretextual. Nichols v. Southern Ill. University-Edwardsville, 510 F.3d 772, 785 (7th Cir. 2007).

On summary judgment, defendant does not raise any issue regarding the first three factors of the prima facie case. It contends plaintiff cannot make out a prima facie case because she cannot make a sufficient showing that a similarly situated employee was treated more favorably. Even if plaintiff can make out a prima facie case, defendant contends that she cannot sufficiently show that discharging her for absenteeism was pretextual.

---

[2] A plaintiff may concede that he or she engaged in conduct that could be grounds for discharge, but show that others outside the protected group also engaged in such conduct and were not discharged. In such situations, the plaintiff will not fail to make out a prima facie case solely based on that deficient conduct being evidence that she did not meet the employer's legitimate expectations. Pulliam v. General Motors, 354 F. Supp. 2d 874, 880-81 (W.D. Wis. 2005).

Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiff's favor, the facts taken as true for purposes of summary judgment are as follows. Effective May 8, 2000, plaintiff was hired as a support service worker in the dietary department at Madden. The dietary department provides meals for residents of the facility. Neither party describes the job duties of a support service worker.[3] Regarding her training, plaintiff testified that she was shown how to perform each assignment in the kitchen. Pl. Dep. 14. From this testimony, the job title, and the nature of the department, it may reasonably be inferred that plaintiff's job duties included food preparation and serving food.

Throughout her time at Madden, plaintiff's immediate supervisor was Bella Ynares, Madden's dietary manager. Ynares was responsible for monitoring the attendance of her employees and disciplining them. While plaintiff was working at Madden, Eddie Spivey was a cook in the dietary department. Ynares was also Spivey's immediate supervisor. While plaintiff was employed at Madden, Janise King was employed as a human resources specialist at Madden. King's duties included ensuring compliance

---

[3]In paragraph 36 of her statement of additional facts, plaintiff asserts that preparing meals was one of her duties. In response, defendant does not deny this fact is true nor point to contrary evidence, but does point out that the factual assertion is not supported by the cited references. Therefore, this fact statement cannot be simply taken as true.

with applicable collective bargaining agreements; representing management at certain levels of the grievance procedure; ensuring compliance with equal employment opportunity requirements and investigating complaints of violations; and implementing and monitoring compliance and discipline under the affirmative attendance provisions of the collective bargaining agreement applicable to both plaintiff and Spivey.

For a period of time, plaintiff was friends with Spivey and would sometimes drive him between the train and Madden. In September 2003, plaintiff asked Spivey to provide gas money for the rides. With Ynares present, Spivey's response included calling plaintiff a "cunt." Plaintiff immediately requested that Ynares talk to Spivey about that comment. Thereafter, Spivey repeatedly harassed plaintiff. In plaintiff's presence, he would refer to plaintiff as "bitch" or "drama queen." Plaintiff heard from others that Spivey was claiming to coworkers that she had masturbated in the workplace, used sex toys in front of Spivey, had sex with several people, and was spreading a sexually transmitted disease. After plaintiff heard such rumors were being spread, several of her coworkers requested sexual favors and one touched her.

On November 23, 2003, plaintiff filed a written complaint of harassment. Prior to December 4, plaintiff talked with King regarding this complaint. Plaintiff also had further discussions

with Ynares. At some point between November 23 and mid-January 2004, Ynares spoke with Spivey and told him to discontinue spreading rumors about plaintiff. Spivey denied he had engaged in any such conduct. On December 4, 2003, plaintiff filed a second written complaint that included the allegations that Spivey was spreading rumors about her. On February 9, 2004, plaintiff next met with King and she had plaintiff begin completing a third written complaint. This interview was incomplete and was not completed until April 28, after which time King began to investigate the complaint. In the meantime, on March 20, plaintiff heard rumors that Spivey was also claiming that she had propositioned him. On March 21, plaintiff filed a fourth written complaint with Ynares's immediate supervisor, Madden Support Service Director Jacqueline Young. Plaintiff subsequently gave King a copy of the fourth complaint. In September 2004, after Spivey discussed an elephant's penis in front of plaintiff and residents, plaintiff submitted another written complaint. Plaintiff also testified that she orally complained to Hospital Administrator Thomas Monahan who told him to talk to Young about it. Plaintiff could not recall when the conversation with Monahan occurred.

After completing her investigation of plaintiff's complaints, King determined that the allegations of harassment were substantiated and so informed Spivey in October 2004. It

was possible that this would have resulted in Spivey being discharged. However, prior to being disciplined, Spivey resigned.

On July 7, 2004, plaintiff filed a sexual harassment charge with the EEOC. On September 8, 2004, she filed a second EEOC charge alleging retaliation. King testified that she did not "believe" she had received a copy of the first EEOC charge as of July 27, 2004; thus indicating she was not certain when she actually received it. EEOC regulations require that the EEOC provide the employer with notice of a charge. The EEOC is to serve notice in person or mail it within 10 days of the filing of a charge. 29 C.F.R. § 1601.14(a).[4] On the charge, Madden's address was listed (not an Illinois Department of Human Services address in Springfield) and King apparently would have been the person at Madden to eventually receive the notice. It is a reasonable inference that King would have received notice of the EEOC charge before July 27.[5] Cf. Sampath v. Concurrent Tech. Corp., 2008 WL 868215 *47 (W.D. Pa. March 31, 2008); O'Phelan v. Federal Express Corp., 2005 WL 2387647 *5 (N.D. Ill. Sept. 27, 2005). Ynares testified that, in November or December 2003,

---

[4]Ten days, as used in the regulation, apparently means calendar days.

[5]Neither party submits documentation from plaintiff's EEOC file showing when and where notice to the employer was actually mailed or otherwise delivered.

plaintiff told her that she intended to file a complaint with the EEOC. Ynares further testified that she was never informed that an EEOC complaint was filed until learning so after plaintiff filed her present lawsuit. However, it is a reasonable inference that once King learned an EEOC charge had been filed, she would have discussed the charge with plaintiff's immediate supervisor, especially since preparing the pre-disciplinary notice meant King and Ynares were otherwise meeting to discuss plaintiff. Thus, there is also a genuine factual dispute regarding whether Ynares learned of the EEOC charge before the pre-disciplinary notice was issued to plaintiff. Cf. Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1458-59 (7th Cir. 1994). On defendant's summary judgment motion, that dispute must be resolved in plaintiff's favor. For purposes of ruling on defendant's motion for summary judgment, it is assumed to be true that, before a pre-disciplinary notice was issued to plaintiff on July 27, 2004, both King and Ynares knew plaintiff had filed an EEOC charge.

A labor agreement applicable to employees of the dietary department provided for progressive discipline for unauthorized absences. In addition to missing an entire day, tardiness of more than one hour can count as an unauthorized absence. Discipline is based on the number of unauthorized absences within a two-year period. Suspensions starting with the fourth absence would be for the following number of days: (4) 1; (5) 3; (6) 5;

(7) 7; (8) 10; (9) 15; and (10) 20. The 11th unauthorized absence was grounds for a discharge. The same standard was in effect from 2000 through 2004. Suspensions and discharge could also be imposed based on being tardy by more than 15 minutes.

One of King's responsibilities was monitoring and enforcing this attendance policy. She received reports of absences. By late 2003, if not earlier as well, King would send to the appropriate supervisor reports of employees with repeated unauthorized absences. The supervisor was responsible for initially suggesting discipline, but King would consult with the supervisor and join in deciding whether to institute proceedings against the employee.

On April 20, 2004, plaintiff received notice of a pre-disciplinary hearing based on seven unauthorized absences and three tardies. A hearing was held the next day during which plaintiff raised that some of the absences were because she could not bear to come to work due to Spivey's harassment. In her written rebuttal, plaintiff did not expressly refer to Spivey or harassment, but mentioned that it was unfair that King had taken the time to go through her time records, but did not take the time to follow up on a complaint she had filed. Plaintiff also stated in the written rebuttal that it was unfair to discipline her and not take into consideration what was going on in the workplace. On May 3, 2004, plaintiff received a seven-day paper

suspension, meaning plaintiff was suspended but did not lose pay and still had to report to Madden.

Plaintiff had an alleged eighth, ninth, and tenth unauthorized absence on, respectively, May 7, June 10, and June 14, 2004. No disciplinary proceedings were instituted to suspend her for the amount of time provided under the progressive discipline provisions. An eleventh unauthorized absence, which would be grounds for discharge, occurred on June 21, 2004.[6]

On July 27, 2004 a pre-disciplinary notice was issued to plaintiff alleging 13 unauthorized absences from May 7 through July 21, 2004. A hearing was held on August 4 and plaintiff subsequently submitted a written rebuttal. Plaintiff contended that she was to have received compensatory time for overtime that she worked and that the compensatory time was for the absences. Defendant took the position that she had already been paid the overtime. Defendant also did not accept plaintiff's contention that she had requested vacation time, but could not know how much vacation time she had because defendant did not timely inform employees regarding how much vacation time they had. Defendant removed six of the absences, but still found seven unauthorized absences which, combined with prior absences, put plaintiff beyond 11 unauthorized absences. On August 26, plaintiff

---

[6]This count omits additional unauthorized absences alleged in a pre-disciplinary notice, but subsequently found to be excused or otherwise dropped.

received notice of a suspension pending discharge. Plaintiff was discharged effective October 14, 2004.

Plaintiff contends that Spivey is a similarly situated employee who did not engage in protected activity and was not discharged for his unauthorized absences. In its reply, defendant argues that plaintiff has failed to provide documentation that Spivey had not pursued EEOC proceedings. Defendant does not point to evidence that Spivey had engaged in protected activity; it only points out that plaintiff has provided no evidence that Spivey has not. In its opening brief, however, defendant had already addressed the issue of Spivey being similarly situated without raising any issue that he had engaged in protected activity. The party responding to a summary judgment motion need not provide support for facts, even essential elements of a claim, that the movant has not indicated are at issue. See Logan, 96 F.3d at 978-79; Smith v. Niles Twp. High Sch. Dist. 219, 2006 WL 1215217 *3-4 (N.D. Ill. May 1, 2006). For purposes of ruling on defendant's motion for summary judgment, it is taken as true that Spivey had not engaged in protected activity.

Between February 1, 2001 and July 4, 2004, Spivey had 34 unauthorized absences. Within the 13-month period from February 1, 2001 through February 26, 2002, Spivey had 11 unauthorized absences. During the next 17-month period ending

July 24, 2003, he had another 11 unauthorized absences. Between that date and July 4, 2004, he had another 11 unauthorized absences. Disciplinary proceedings were never instituted seeking to discharge Spivey based on the absences. On April 30, 2004, Spivey was placed on a five-day paper suspension for unauthorized absences in February and March 2004. On May 3, 2004, Spivey was suspended 15 days based on nine incidents occurring from January through March 2004 in which he was tardy by more than 15 minutes.

As to the similarly situated requirement, the Seventh Circuit has stated it

> "*normally* entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000) (emphasis added); see also [citations omitted]. In other words, we have emphasized that the similarly situated inquiry is a flexible one that considers "all relevant factors, the number of which depends on the context of the case." Radue, 219 F.3d at 617. "As to the relevant factors, an employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity." Id. at 618; see also Goodwin v. Bd. of Trs. of Univ. of Ill., 442 F.3d 611, 619 (7th Cir. 2006); Ezell [v. Potter], 400 F.3d [1041,] 1050 [(7th Cir. 2005)].
> In addition, our case law does not provide any "magic formula for determining whether someone is similarly situated." Chavez v. Ill. State Police, 251 F.3d 612, 636 (7th Cir. 2001) (discussing the similarly situated requirement in the equal protection context). Instead, courts should apply a "common-sense" factual inquiry-- essentially, are there enough common features

between the individuals to allow a meaningful comparison? Id. (citing Freeman v. Madison Metro. Sch. Dist., 231 F.3d 374, 382-83 (7th Cir. 2000) and Radue, 219 F.3d at 619). Put a different way, the purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination. See Hull, 445 F.3d at 951-52.

It is important not to lose sight of the common-sense aspect of this inquiry. It is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees--distinctions can always be found in particular job duties or performance histories or the nature of the alleged transgressions. See, e.g., Ezell, 400 F.3d at 1050. Now, it may be that the degree of similarity necessary may vary in accordance with the size of the potential comparator pool, as well as to the extent to which the plaintiff cherry-picks would-be comparators, see Crawford v. Ind. Harbor Belt R.R. Co., 461 F.3d 844, 845-46 (7th Cir. 2006), but the fundamental issue remains whether such distinctions are so significant that they render the comparison effectively useless. In other words, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination or retaliation--recall that the plaintiff need not prove anything at this stage.

Humphries v. CBOCS West, Inc., 474 F.3d 387, 404-05 (7th Cir.), cert. granted on other grounds, 128 S. Ct. 30 (2007). Accord South v. Illinois Environmental Prot. Agency, 495 F.3d 747, 752 (7th Cir. 2007).

Here, plaintiff and Spivey had the same immediate supervisor making the initial decision as to discipline. In both instances, the immediate supervisor would have been advised by the same human resources specialist. Both plaintiff and Spivey were subject to the same attendance policy and the same rules for imposing and appealing discipline. As to their attendance violations, Spivey's were more excessive than plaintiff's. Defendant contends the two are dissimilar because Spivey was a cook and plaintiff was a support services worker. Both positions involve providing food for residents of Madden. Spivey's duties apparently were focused on preparing the food. Plaintiff's involved at least some food preparation and apparently also involved serving the food. Nothing in the record indicates that adequate attendance was more important to plaintiff's position than Spivey's. Ordinarily, food service requires more servers or other assistants than cooks. It is reasonable to infer that unexcused absences of a cook would place a greater burden on food service demands than an unexcused absence of a server. Spivey satisfies the requirement of being similarly situated. Despite his greater absences and more key position, Spivey had only been suspended while plaintiff was already being considered for discharge. Plaintiff has made an adequate showing of the fourth element of her prima facie case.

Although plaintiff satisfies standard criteria for a prima facie case of retaliation, it is not reasonable to infer she was discharged because of a retaliatory motive if the pertinent decisionmakers had no knowledge that she had engaged in protected activity. Tomanovich v. City of Indianapolis, 457 F.3d 656, 668-69 (7th Cir. 2006) (quoting Shafer v. Kal Kan Foods, Inc., 417 F.3d 663, 664 (7th Cir. 2005)); Durkin v. City of Chicago, 341 F.3d 606, 614 n.4 (7th Cir. 2003). There is no dispute that Ynares and King were aware that plaintiff had filed internal complaints of sexual harassment, which themselves qualify as protected activity. See Tomanovich, 457 F.3d at 663; O'Sullivan v. City of Chicago, 2006 WL 3332788 *4 n.4 (N.D. Ill. Nov. 6, 2006). On summary judgment, it must also be assumed that, just before issuing the pre-disciplinary notice proposing a discharge, Ynares and King learned plaintiff had filed an EEOC charge. Plaintiff has made an adequate showing that the pertinent decisionmakers were aware she had engaged in protected activity. The temporal relationship between the EEOC charge and the issuing of the pre-disciplinary notice is circumstantial evidence providing additional support that her discharge was

motivated by retaliation.[7] See Culver v. Gorman & Co., 416 F.3d 540, 545-46 (7th Cir. 2005); Massey v. Johnson, 457 F.3d 711, 717 (7th Cir. 2006).

Defendant proffers that it discharged plaintiff for the legitimate, non-discriminatory reason that she violated the attendance policy. Defendant having met its burden of production, the burden of persuasion remains with plaintiff to sufficiently show that the articulated ground is pretextual. The plaintiff can do this by showing race was a motivating factor in the employer's decision or by presenting a material factual dispute as to the sincerity of the proffered reasons. Freeman, 231 F.3d at 379; Collier v. Budd Co., 66 F.3d 886, 892 (7th Cir. 1995) (quoting Colosi v. Electri-Flex Co., 965 F.2d 500, 502 (7th Cir. 1992)). As to the latter, evidence must adequately support an inference (a) that the proffered reason had no basis in fact, (b) that the proffered reason did not actually motivate the decision, or (c) that the reason was an insufficient reason to motivate the decision. See United States EEOC. v. Target

---

[7]Plaintiff also contends that she is her own similarly situated comparable. She contends that her pre-EEOC charge self (who had unauthorized absences but no discharge proceeding) was treated differently from her post-EEOC charge self, against whom discharge proceedings were instituted. Such evidence is more appropriately considered as circumstantial timing evidence.

Corp., 460 F.3d 946, 957 (7th Cir. 2006); Holmes v. Potter, 384 F.3d 356, 361 (7th Cir. 2004); Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1006 (7th Cir. 2002). "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." Davis v. Con-Way Transp. Cent. Express, Inc., 368 F.3d 776, 784 (7th Cir.2004) (quoting Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000)).

Here, evidence that Spivey had more unauthorized absences than plaintiff without discharge proceedings being initiated against him, as well as the timing of the issuance of the pre-disciplinary notice, are a sufficient basis for inferring that the unauthorized absences did not actually motivate the decision to discharge plaintiff. See Humphries, 474 F.3d at 407 (citing Curry v. Menard, Inc., 270 F.3d 473, 479 (7th Cir. 2001)); Scott-Riley v. Mullins Food Prod., Inc., 391 F. Supp. 2d 707, 715 (N.D. Ill. 2005); Crochrell v. Illinois Dept. of Transp., 2005 WL 2388267 *9 (S.D. Ill. Sept. 28, 2005); Minervini v. Seven Worldwide, Inc., 2002 WL 58793 *6 (N.D. Ill. Jan. 16, 2002). Defendant is not entitled to summary judgment.

IT IS THEREFORE ORDERED that plaintiff is granted leave to file an oversized statement of additional facts. Defendant's

motion for summary judgment [81] is denied.  In open court on June 25, 2008 at 11:00 a.m., the parties shall submit an original and one copy of a final pretrial order in full compliance with Local Rule 16.1 and Local Rule Form 16.1.1, including trial briefs, proposed voir dire questions, motions in limine with supporting briefs, and proposed jury instructions.

ENTER:

/s/ William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: MAY 8, 2008